**ALLSTATE INSURANCE COMPANY**

v.

**Alan ELWELL and Ellen Smith Demont.**

Supreme Judicial Court of Maine.

Argued April 30, 1986.
Decided July 23, 1986.

Hewes, Beals & Douglas, James B. Haines, Jr. (orally), Portland, for plaintiff.

Berman, Simmons & Goldberg, P.A, Thomas J. Valvano (orally), William D. Robitzek, Lewiston, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and SCOLNIK, JJ.

SCOLNIK, Justice.

The plaintiff, Allstate Insurance Company (Allstate), commenced this declaratory judgment action in the Superior Court (Cumberland County) pursuant to 14 M.R.S.A. §§ 5951–5963 (1980) seeking a declaration of its rights and obligations under an automobile liability insurance policy issued by Allstate to the defendant, Alan Elwell. The policy contains a so-called family exclusion that excludes from the insured's liability coverage "bodily injury to any person who is related by blood, marriage, or adoption to an insured against whom a claim is made if such person resides in the same household as such insured." The Superior Court granted summary judgment in favor of Allstate, concluding that Allstate owes no duty to defend or indemnify Elwell in the underlying action brought against him by his ex-wife, the defendant, Ellen Smith Demont. Only Demont appeals. Finding no error, we affirm the judgment.

Elwell purchased an automobile liability insurance policy from Allstate in 1978. In April, 1982, he married Demont with whom he was then living. On May 4, 1982, Demont, a passenger in a pick-up truck driven by Elwell, was injured when the truck collided with another vehicle. Subsequently, Elwell and Demont have been divorced. After the divorce, Demont commenced an action against Elwell and Allstate seeking damages for her injuries and, *inter alia*, a declaration that under the liability policy, Allstate was obligated to defend and indemnify Elwell for any judgment that Demont might obtain against him. In *Smith v. Allstate Ins. Co.*, 483 A.2d 344, 347 (Me.1984), we held that Demont lacked

standing to request the declaratory relief regarding Allstate's duty to defend Elwell in her negligence action against him.[1]

With Demont's remaining negligence claim against Elwell still pending, Allstate commenced this action for a declaratory judgment on the issue that Demont was found to be without standing to raise. Allstate asks the court to declare that the family exclusion provision is valid, thus relieving it of the duty to defend or indemnify Elwell on Demont's negligence claim. On November 21, 1985, the Superior Court, concluding that the family exclusion is enforceable, granted Allstate's motion for summary judgment. It rejected Demont's contentions that the policy is ambiguous, that Allstate is estopped from enforcing the exclusion and that the family exclusion is void because it is against public policy.

Under Rule 56(c) of the Maine Rules of Civil Procedure, summary judgment will be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that judgment should be entered as a matter of law. *See Procise v. Electric Mut. Liab. Ins. Co.*, 494 A.2d 1375, 1380 (Me.1985).

### I. *Ambiguity*

Demont first contends that the policy is ambiguous and therefore should be construed in her favor. We disagree. The policy is divided into four sections. The pertinent section, Section I, is entitled "LIABILITY PROTECTION." Under the terms of that section, Allstate agreed

[to] pay for an insured all damages which the insured shall be legally obligated to pay because of:

1. bodily injury sustained by any person

. . . . .

sured motorist coverage. 483 A.2d at 347.

---

1. In *Smith,* we also found that Demont could not recover under the liability policy's unin-

arising out of the ... use ... of the owned automobile....

Allstate will defend, at its own expense and with counsel of its choice, any lawsuit, even if groundless, false or fraudulent, against any insured for such damages which are payable under the terms of this Section....

The above language is followed by eighty lines of text identifying certain additional payments Allstate agrees to make, a description of the persons who are insured— "[a]ny resident of the named insured's household with respect to the owned automobile"—and a page of definitions. In the subsection entitled *"Exclusions—what this Section of the policy does not cover,"* number seven states

This section I does not apply to:

.    .    .    .    .

(7) bodily injury to any person who is related by blood, marriage, or adoption to an insured against whom a claim is made if such person resides in the same household as such insured.

▮▮▮ Ambiguities in an insurance contract are resolved against the insurer. *See Baybutt Constr. Corp. v. Commercial Union Ins. Co.,* 455 A.2d 914, 921 (Me.1983). A policy is ambiguous if an ordinary person in the shoes of the insured would not understand that the policy did not cover claims such as those brought by Demont. In *Baybutt,* we said:

[T]he language used in the policy should be viewed from the standpoint of the average ordinary person who is untrained in either the law or the insurance field "in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured."

*Id.* (quoting *Brown v. City of Laconia,* 118 N.H. 376, 386 A.2d 1276, 1277 (1978)).

▮▮ A more than casual reading of the policy before us discloses that liability coverage for claims for bodily injuries made by family members against the insured is specifically excluded. This exclusion is couched in clear, readable, unequivocal language. We reject Demont's contention that the structure of the policy creates an ambiguity that results from the general liability coverage being on one page, the definition of insured on another, and the exclusion section on yet another. The fact that a policy is lengthy and contains interrelated language on different pages does not, by itself, render the policy structurally ambiguous. The separate subsections pertaining to definitions and exclusions are individually italicized. Although the exclusion clauses are not in capital letters or boldly captioned, the subsection does not fail to convey its importance to one who reads the policy.

▮▮ Demont further contends that the family exclusion is so unusual and significant to an insured that its existence should be displayed more prominently so that the insured could not help but be aware of it and a failure to so display it renders the policy ambiguous in meaning. We disagree. The failure by Allstate to display the family exclusion in a more prominent manner does not render the policy equivocal.[2] Other jurisdictions have found without difficulty that similar family exclusion clauses are unambiguous. *See Porter v. Farmers Ins. Co.,* 102 Idaho 132, 627 P.2d 311, 315 (1981); *Allstate Ins. Co. v. Odeh,* 126 Ill.App.3d 85, 81 Ill.Dec. 467, 468, 466 N.E.2d 1269, 1270 (1984); *Allstate Ins. Co. v. Boles,* 481 N.E.2d 1096, 1101 (Ind.1985). We conclude that an ordinary insured who reads this policy in more than casual fashion would not reasonably expect that there would be coverage in the circumstances of

**2.** That the Maine Legislature has recently required all motor vehicle liability insurance policies issued after January 1, 1986, containing the family exclusion to include the exclusion "by a separate endorsement to the insured's policy," 24-A M.R.S.A. § 2902-A (Supp.1985-1986), does not require a contrary conclusion. It merely demonstrates the intent of the Legislature to make the exclusion more obvious to the policyholder. *See* footnote 3 for the full text of this enactment.

this case. Demont's first argument is therefore without merit.

## II. *Estoppel*

Demont next argues that Allstate should be estopped from asserting the family exclusion clause to avoid coverage because Allstate neither "pointed out" the clause to Elwell nor explained to him that there was no liability coverage for family members who might ride with him.

Estoppel rests on misleading conduct. *Roberts v. Maine Bonding & Casualty Co.*, 404 A.2d 238, 241 (Me.1979). For estoppel to apply in a case involving insurance coverage, two elements are required: "(1) unreasonable conduct of the insurer which misleads the insured concerning the scope of his coverage and (2) justifiable reliance by the insured upon that conduct of the insurer." *Id.* The conduct relied on must have induced the insured "to do what resulted to his detriment and what he would not otherwise have done." *Id.; see also Connelly v. Home Life Ins. Co.*, 432 A.2d 1235, 1236 (Me.1981).

There is nothing in this record to suggest that Allstate ever misled Elwell to believe that in spite of the unambiguous family exclusion, members of his family would be covered. In reply to an inquiry concerning his marital status at the time he originally purchased the liability policy in May, 1978, Elwell stated that he was unmarried. He married Demont sometime after the last renewal prior to the accident. Elwell did not inform Allstate of his marriage and had never bothered to read the policy. We find no reason to conclude that Allstate acted unreasonably or misled Elwell.

## III. *Public Policy*

Demont next argues that the family exclusion should be declared unenforceable because it contravenes the public policy that is implicit in the Financial Responsibility Law, 29 M.R.S.A. §§ 781–789 (1981 & Supp.1985). She relies principally on the decision of the Washington Supreme Court in *Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wash.2d 203, 643 P.2d 441 (1982).

A contract that contravenes public policy will not be enforced by our courts. *See, e.g., Thacher Hotel, Inc. v. Economos*, 160 Me. 22, 25–26, 197 A.2d 59, 61 (1964); *Jolovitz v. Redington & Co.*, 148 Me. 23, 88 A.2d 589 (1952). A contract is against public policy if it "clearly appears to be in violation of some well established rule of law, or that its tendency will be harmful to the interests of society." *Lesieur v. Inhabitants of Rumford*, 113 Me. 317, 319–20, 93 A. 838, 839 (1915); *see also Hinckley v. Giberson*, 129 Me. 308, 151 A. 542 (1930). Whenever a court considers invalidating a contract on public policy grounds, it must also weigh in the balance the parties' freedom to contract. Agreements "are not to be lightly set aside." *Thacher Hotel, Inc. v. Economos*, 160 Me. at 26, 197 A.2d at 61 (quotation and citations omitted).

Demont asserts that Maine's Financial Responsibility Law embodies a broad underlying public policy assuring that victims of the negligent operation of motor vehicles recover damages for their injuries. We are unable to construe the statute so broadly. The Financial Responsibility Law is distinguishable from mandatory insurance statutes by which some states require all motorists to obtain a minimum level of automobile liability insurance. In Maine, drivers are required to purchase insurance or otherwise demonstrate financial responsibility only when they have been convicted of certain motor vehicles offenses or when the Secretary of State requires it after a driver is involved in an injury-causing accident. 29 M.R.S.A. §§ 782–783. The Legislature has not been unwilling to regulate specific areas of automobile insurance. *See* 24–A M.R.S.A. § 2902 (1974 & Supp.1985–1986) (uninsured motorist coverage required on all automobile liability policies issued in this State). Given the legislative choice not to mandate generally automobile liability insurance and to specify the terms of such policies only in

particular areas, it would be inappropriate for this court to replace this assessment of public policy with its own. Accordingly, Maine's Financial Responsibility Law does not incorporate the broad public policy suggested by Demont.[3]

■ Demont also contends that the decisions of this court abrogating the doctrine of inter-spousal immunity, *MacDonald v. MacDonald*, 412 A.2d 71 (Me. 1980), and parent-child immunity, *Black v. Solmitz*, 409 A.2d 634 (Me.1979), in effect invalidate family exclusions because these decisions represent a public policy "that there be a remedy for torts between family members." This argument is also without merit. *MacDonald* and *Black* did not purport to determine the scope of a contract between an insured and an insurer, but merely determined the right of family members to bring an action against one another. Furthermore, the decisions do not declare a judicial policy requiring automobile insurers to reimburse all persons injured by negligent operators of motor vehicles. In sum, the abolition of intra-family tort immunities has no effect on the validity of the family exclusion. *See Florida Farm Bureau Ins. Co. v. Government Employees Ins. Co.*, 387 So.2d 932 (Fla. 1980); *Porter v. Farmers Ins. Co.*, 102 Idaho 132, 627 P.2d 311 (1981); *Allstate Ins. Co. v. Boles*, 481 N.E.2d 1096 (Ind. 1985); *American Family Mut. Ins. Co. v. Ryan*, 330 N.W.2d 113 (Minn.1983) (homeowner's liability policy); *Faraj v. Allstate Ins. Co.*, 486 A.2d 582 (R.I.1984).

Finally, Demont asks us to adopt the holding in *Mutual Enumclaw Ins. Co. v. Wiscomb*, 97 Wash.2d at 206–12, 643 P.2d at 443–46. There, the Washington Supreme Court invalidated on public policy grounds a similar family exclusion. We decline to follow *Wiscomb* for two reasons. First, that case is distinguishable from the one before us because no insurance policy without the family exclusion clause was obtainable in the State of Washington, and the Washington court found that the State's financial responsibility law evinced a strong public policy in favor of assuring monetary protection and compensation to those persons who suffer injuries. *Id.* There is no evidence in the case before us that suggests that an insured is unable to obtain a policy in Maine without the family exclusion clause. In addition, we find no broad public policy in our statutes comparable to that relied on by the Washington court.

Second, the clear majority of jurisdictions that have considered the issue have rejected the *Wiscomb* rationale and held that a family exclusion clause does not violate public policy. *See, e.g., Florida Farm Bureau Ins. Co. v. Government Employees Ins. Co.*, 387 So.2d 932 (Fla.1980); *Porter v. Farmer Ins. Co.*, 102 Idaho 132, 627 P.2d 311 (1981); *Allstate Ins. Co. v. Boles*, 481 N.E.2d 1096 (Ind.1985); *Walker v. American Family Mut. Ins. Co.*, 340 N.W.2d 599 (Iowa 1983); *Faraj v. Allstate Ins. Co.*, 486 A.2d 582 (R.I.1984). *But see Hughes v. State Farm Mut. Auto. Ins. Co.*, 236 N.W.2d 870 (N.D.1975); *Estep v. State*

---

**3.** Our reading of Maine's statutory public policy is consistent with recently enacted legislation that became effective after this action was commenced. The legislation now requires that family exclusions be provided by separate endorsement to the insured's policy. *See* P.L.1985, ch. 136 (effective Sept. 19, 1985) (codified at 24–A M.R.S.A. § 2902–A (Supp.1985–1986)).

Section 2902–A provides:

**Household exclusion**

**1. Definitions.** As used in this section, unless the context otherwise indicates, the following terms have the following meanings.

**A.** "Family member" means a person related to the insured by blood, marriage or adop-

tion who is a resident of the insured's household, including a ward or foster child.

**2. Exclusion.** No insurer may sell or renew an insurance policy providing motor vehicle liability insurance on or after January 1, 1986, that excludes coverage for injuries sustained by the insured's family members unless the insurer notifies the bureau in writing of its utilization of the exclusion, the insurer notifies each of its licensed agents within the State of its utilization of the exclusion and the exclusion is provided by a separate endorsement to the insured's policy. An exclusion that does not meet the requirements of this section shall be invalid and of no effect.

*Farm Mut. Auto. Ins. Co.,* 103 N.M. 105, 703 P.2d 882 (1985). *See generally* Annot. 46 A.L.R.3d 1024 (1972).

For the foregoing reasons, we conclude that the Superior Court correctly refused to invalidate the family exclusion clause in the automobile liability insurance policy issued by Allstate to defendant Elwell.

The entry is:

Judgment affirmed.

All concurring.